PANGBURN *v.* THE NORWEGIAN BARK GUNN.

THE SAME *v.* THE ITALIAN BARK CARMELITA ROCCA.

CONTI *v.* THE NORWEGIAN BARK GUNN.

(*District Court, E. D. New York.* May 28, 1880.)

1. COLLISION AT PIER—VESSELS ADRIFT IN A STORM.—In the East river, at Brooklyn, during a squall, the bark Gunn attempted to make fast at a pier outside of a bark, the C. Rocca, which again was fast outside a ship, the Paulina. Before the moorings could be all made fast the C. Rocca broke loose, and both she and the Gunn were driven against a canal-boat, the William Doran, lying further up in the slip, doing and receiving damage. Suit was brought in this district by the owner of the canal-boat to recover damages against both the other vessels; and suit was also begun in the southern district of New York, by the owner of the C. Rocca, to recover his damages against the Gunn, which, by consent, was tried with the other two actions in this court. *Held*, that the Gunn, having taken the risk of making fast at such a place in face of a storm, was responsible for damages caused by the accident to the other two vessels, and that the C. Rocca was not liable for damages caused to the canal-boat.

In Admiralty.

*T. C. Campbell,* for libellant Pangburn.

*Butler, Stillman & Hubbard,* for bark Gunn.

*Coudert Bros.,* for libellant Conti and bark Rocca.

BENEDICT, D. J.   On the second day of August, 1878, the Italian bark Carmelita Rocca arrived in the slip off Kelsey's stores, Brooklyn, and placed herself outside of the German ship Paulina, then moored on the upper side of the wharf. A squall was threatening, and two hawsers were at once run from the stem of the Carmelita Rocca to the pier.   Before her bow fastening could be put out, the Norwegian bark Gunn came into the slip in tow of a tug, and placed herself along-side of the Carmelita Rocca.   The storm was then imminent.   Those in charge of the Gunn commenced at once to make fast by running lines to the Carmelita Rocca.   Two lines were made fast to her, although warned that her fastening was not complete, and that permission to make fast to her could not be given.   A hawser was also sent in a boat from the Gunn, to be made fast to the pier.   As the men were about to put the hawser over the spile on the pier, the lighter Helen Brown, having lost control of herself in the storm which was then upon them, drove against the hawser and pulled it from the hands of the men who had it, and subsequently brought up on the stern of the Gunn.   About this time the master of the Gunn jumped on to the Carmelita Rocca and made fast a third line to her, and at about the same time the two hawsers from the Carmelita Rocca to the pier parted, and both the Carmelita Rocca and the Gunn went adrift.   They brought up on the canal-boat William Doran, lying further up in the slip, each vessel doing damage to the canal-boat.   Some damage was also done meanwhile to the Carmelita Rocca by the Gunn, and some damage was also done to the German bark Paulina by the catching of her yards by the Carmelita Rocca as she went adrift.

Out of this occurrance the three entitled suits arose.   The first is brought by the owner of the canal-boat William Doran, to recover for the damage done to that boat by the striking of the Gunn upon her.   The second is by the same libellants, to recover for the damage done to the William Doran by the

striking of the Carmelita Rocca upon her. The third suit, which was brought in the southern district of New York, but is heard before me with the other causes, by consent, is by the owner of the Carmelita Rocca, to recover for the damages caused to that vessel by the act of the master of the Gunn in causing her to go adrift.

The defence on the part of the Gunn is that the damage arose from inevitable accident, and not from any fault on the part of those in charge of the Gunn. The defence on the part of the Carmelita Rocca is that the damage done by her to the canal-boat was caused by fault of the Gunn, and not by any fault on the part of the Carmelita Rocca.

I do not deem it necessary to follow the careful argument that has been made on behalf of the Gunn to justify the steps taken by those in charge of that vessel to make fast, and show that it was impossible for them to have done more that they did to get the vessel properly fastened before she broke adrift; for, as I view the case, the controlling fault on the part of the Gunn was in coming along-side the Carmelita Rocca at the time she did. The Gunn was in tow of a tug. A heavy storm was seen to be approaching. There is no evidence to show that the slip where these vessels were was the only or indeed a proper place to enter at such a time. It must be presumed that there were other places where the Gunn could have made fast if the effort had been made in time, and perhaps she could have anchored without difficulty. Instead, she took the risk of getting into the slip where she was bound, and then making fast before the storm should break. In this she failed. The storm was upon her before she was made fast, and the consequence was the damage to these other vessels in the slip, who were guilty of no fault, and sustained injury simply because the Gunn attempted a dangerous maneuver to do what, according to her own showing, it was impossible for her to accomplish in the time at her disposal, namely, get properly fast to a pier in the slip.

It is said in behalf of the Gunn that she would have accomplished this had not the lighter Helen Brown struck her hawser as it was being run to the pier, and afterwards

brought up upon her stern, and that the presence of the lighter was the immediate, unexpected and unavoidable cause of the accident that followed. But the storm was upon them before the lighter came. The delay in making fast the hawser, caused by the lighter, was but slight, and the weight of the lighter herself not great. The master of the Gunn had no right to calculate so closely in such a case. Some little delay in getting fast should have been allowed for. As it was, it is doubtful if the bark would have been fast in time had the lighter not been there at all. In regard to the suit of the Carmelita Rocca, it is to be remarked that the claim is not that the Gunn injured her by breaking adrift, but by causing her to break adrift. The answer made to this, on behalf of the Gunn, is that the master of the Gunn, in fastening to the Carmelita Rocca, was actuated by a sense of peril, and the act may, therefore, be excused. His perturbation "carrieth a privilege," it is said. But the difficulty is that he had no right, with his eyes open, to put himself in a place where he must necessarily be perturbed. Having placed himself where he must take the risk of dragging the Carmelita Rocca from her moorings, or suffer greater danger himself, he must bear the lesser loss that arose from his effort to avoid the greater one. He attempted a dangerous maneuver, and failed in the attempt.

My conclusion, therefore, is that the owner of the canal-boat is entitled to recover of the Gunn the damage caused to the canal-boat by the striking upon her of the Gunn and the Carmelita Rocca, and that the owner of the Carmelita Rocca is entitled to recover of the bark Gunn the damage sustained by her by reason of her being carried from her moorings by the Gunn. I am not able to see that the Carmelita Rocca is responsible to the owner of the canal-boat in any amount, for the evidence fails to show that her lines were insufficient; and as to having the anchor hanging, viz., so that it caught the canal-boat, this was no fault under the circumstances, for on dire occasion it was the first duty of the Carmelita Rocca to make herself fast, and she had no time to secure her anchor before she was carried adrift. There will, there-

fore, be a decree in the first case in favor of the libellant, with an order of reference. A similar decree will be entered in the third case. In the second case the libel will be dismissed, and all with costs.